UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| Hartford R. Best, # 105214, | ) C/A No. 2:10-1381-RBH-RSC |
|---|---|
| Petitioner, | ) |
| vs. | ) Report and Recommendation |
| McKither Bodison, Warden, | ) |
| Respondent. | ) |

A Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 has been submitted to the Court *pro se* by a state prison inmate.[1] This is Petitioner's initial § 2254 Petition addressing a 1981 murder conviction and life sentence entered on a guilty plea in Horry County. This case is before the undersigned United States Magistrate Judge on remand from District Judge Harwell following his review of Petitioner's Objections (ECF No. 12) to a previously issued Report and Recommendation. (ECF No. 10). As a result of his review, Judge Harwell issued an Order directing Petitioner to address the issue of whether or not the Petition in this case is barred by the statute of limitations for federal habeas corpus cases contained in 28 U.S.C. § 2244. (ECF No.

---

[1] Pursuant to 28 U.S.C. §636(b)(1)(B), and D.S.C. Civ. R. 73.02(B)(2)(c), this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court. *See also* 28 U.S.C. §§ 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

1

14). The case was then remanded to the undersigned for further consideration. (*Id.*).

Petitioner has complied with Judge Harwell's Order. (ECF No. 16). In his Petition and in his response to Judge Harwell's Order, Petitioner asserts that his murder conviction should be vacated by this Court because the trial judge did not personally sign the commitment order under which he is currently serving a life sentence in prison. Petitioner has submitted a copy of the subject order as an attachment to his Reply to Judge Harwell's Order. The commitment order is dated January 17, 1981, has the trial judge's name typed on it, has an acknowledgment provision personally signed by the Horry County Clerk of Court,[2] and has a stamp on it showing that it was "received" for filing in the public record by the Office of the Clerk of Court's on January 19, 1981. (ECF No. 16, Pet. Reply to Ct. Order, ex. 1). According to Petitioner, he never saw the commitment order until November 5, 2007, when he was placed back into prison following revocation of the parole he had obtained in 2000. (*Id.* 2). Petitioner does not say that anyone or anything prevented him from accessing and viewing the Horry County public records of his criminal case at any time after January 19, 1981.

---

[2] The signed acknowledgment states:

I, Billie G. Richardson, Clerk of Court of General Sessions for Horry County, State aforesaid, do hereby certify that the foregoing is a true copy of the sentence pronounced by the court in the case above stated.

Given under my hand and the Seal of the said court in Conway, S.C. this 17th day of January A.D. 1981.

2

According to Petitioner's allegations in the Petition, as supplemented by his Reply to the Motion to Show Cause, he did not file a direct appeal from his 1981 conviction and sentence at any time prior to April 24, 1997 (the grace period provided for prisoners convicted prior to April 24, 1996 to begin the exhaustion of state remedies process under the Anti-terrorism and Effective Death Penalty Act), and he never filed a Post Conviction Relief (PCR) Application in the Court of Common Pleas of Horry County to raise the ground for relief he seeks to raise in this Petition. The issue of the allegedly unsigned commitment order was never brought before any South Carolina state court until January 23, 2008 (twenty-seven years after his conviction, when Petitioner filed a motion in his long-closed criminal case. The Motion was allegedly based on newly discovered evidence (the unsigned commitment order)and it sought vacation of the conviction and sentence. According to Petitioner, the trial judge to whom the Motion was assigned (not the sentencing judge)denied the Motion, but made no findings of fact or conclusions of law in connection with that denial. Following the final denial of the motion on March 3, 2009, Petitioner appears to have waited for nearly a year to seek review of that ruling by filing a document entitled "petition for writ of habeas corpus" in the South Carolina Supreme Court on February 10, 2010. That court refused to issue a writ and dismissed the petition on March 3, 2010, holding: "Petitioner has not shown that 'there has been a violation which, in the setting, constitutes a denial of fundamental fairness shocking to the universal sense of justice.'" Petitioner ended state court proceedings

3

when the South Carolina Supreme Court denied rehearing on its rejection of the petition for writ of habeas corpus on April 7, 2010. This Petition was filed nearly one and a half months later.

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition filed in this case. The review was conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

This Court is required to construe *pro se* petitions liberally. Such *pro se* petitions are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a petition filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* petition the petitioner's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege

facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir. 1990). However, even under this less stringent standard, the Petition submitted in this case is subject to summary dismissal because it is untimely.

On April 24, 1996, an amendment to 28 U.S.C. § 2244 established a one-year statute of limitations for filing habeas petitions.[3] Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the <u>latest</u> of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered

---

[6] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. *Duarte v. Hershberger*, 947 F. Supp. 146, 148n.2 (D.N.J. 1996).

5

> through the exercise of due diligence.
>
> (2) The time during which a "properly filed" application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

For convictions such as Petitioner's that became final before the AEDPA's effective date, the limitations period began on April 24, 1996. See *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000). The period therefore expired on April 24, 1997 (absent tolling). See *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000). As stated previously, Petitioner filed his first motion raising the issue of the un-signed commitment order on January 23, 2008. Accordingly, in absence of some valid basis for tolling, Petitioner's period of limitations had already expired by the time he even began an effort to exhaust state remedies relative to propriety of his confinement based on the commitment order.

Review of Petitioner's response to Judge Harwell's Order and of the allegations contained in the Petition and all attachments thereto discloses no evidence that warrants equitable tolling in this case. In the case of *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

> Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris*, however, rarely will circumstances warrant equitable tolling:

6

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.'" Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir.2001) (quoting Harris, 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.

Id. at 246-47.

In an apparent attempt to come within the Rouse test for equitable tolling, Petitioner asserts that the existence of an unsigned commitment order itself satisfies the "extraordinary circumstances" requirement (ECF No. 16, Pet. Reply 3), yet he fails to show how the presence of these circumstances (confinement under an unsigned order), even if they

7

are assumed to be beyond Petitioner's control, "prevented him from filing on time." Petitioner cites to the case of *Villegas v. Johnson*, 184 F. 3d 467 (5th Cir. 1999), for the proposition that the federal habeas corpus statute of limitations may be tolled when a commitment order is not signed by the committing judge. He claims that tolling is required because the lack of a signed commitment order is an "extraordinary circumstance" as that term is understood in the § 2244(d)(2), but he does not explain the factual relevance of that case to his argument. Review of that case discloses no discussion of either "extraordinary circumstance" or lack of a signed commitment order, much less does it state that an unsigned commitment order indefinitely tolls the statute of limitations as Petitioner seems to assert. Instead, the gist of the Villages opinion is a discussion of a limited period of tolling when a "properly filed application" instead of a "successive petition" is pending at the time the statute runs. Since neither of these issues is involved in this case, the relevance of this discussion to Petitioner's claim is questionable.

Regardless of the factual irrelevance of the *Villegas* case to this one, it is extremely relevant that the Order that Petitioner now claims requires vacation of his conviction has been part of the public record in Horry County since it was filed by the Clerk of Court on January 19, 1981. As stated previously, Petitioner does not allege that the existence of his commitment order was intentionally or otherwise kept from him by anyone involved in his criminal case or with the Horry County court system in general. The only thing Petitioner states

8

regarding his failure to discover the unsigned order within the some fifteen years that he had from the time his conviction became final in 1981 to file a timely initial § 2254 petition by April 16, 1997, is that he did not become aware of the existence of the subject order until he was returned to prison in 2007 following the revocation of the parole he had received in 2000. He simply does not provide the Court with any excuse for his failure to review the public record of his criminal case at any time before 2007. As a result, even if this Court were to find that the presence of an unsigned commitment order in a state criminal case presents "extraordinary circumstances" beyond Petitioner's control, we still are left with an absence of any fact showing that Petitioner was "prevented from filing on time" because or these circumstances. Even if Petitioner had raised his *pro se* litigant status as a purported excuse for his failure to view the public record available to him at all times since his incarceration on the life sentence, that would not require the tolling of the statute. It is well established that a *pro se* prisoner's ignorance of the law is not a basis to invoke equitable tolling. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *see Ocon-Parada v. Young*, No. 3:09cv87, 2010 WL 2928590 (E.D. Va. July 23, 2010)(ignorance or confusion about the functioning of the federal statute of limitations does not qualify as an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States").

Moreover, the Fourth Circuit Court of Appeals has clearly placed an obligation on a prisoner to review "public sources" to determine

9

whether or not grounds for habeas relief exist by ruling that the statute of limitations begins to run on the date when the ground could be seen through public sources, regardless of whether the prisoner actually saw it. *Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003). Failure to consult public records where available indicates a lack of due diligence on Petitioner's part. Under long-established principles, Petitioner's lack of due diligence in reviewing the public record precludes equity's operation. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). "Equity should not be exercised to save an individual from his own failure to act or be based upon excuses which are little more than attempts to shift blame for the failure to act, rather than to explain an unfairness to external to the individual's acts." *Tudor v. Rushton*, No. 2:06-0342-RBH, 2007 WL 4856866 (D.S.C. Jan. 30, 2007). The undersigned finds that Petitioner has not shown any real extraordinary circumstances or due diligence in the wake of such circumstances to warrant equitable tolling of the § 2244 statute of limitations.

As an alternative to his "extraordinary circumstances"/equitable tolling argument, Petitioner claims that his Petition is timely under § 2244(d)(1)(D) without the necessity of equitable tolling because he did not discover the existence of the unsigned commitment order, the basis for his Petition, until 2007. He claims that he then exercised due diligence in pursuing his claim through the state courts. He is, essentially, making a "new evidence" argument, claiming that the § 2244 statute of limitations did not begin to run until he personally saw the

subject commitment order. The problem with this argument is that, once again, Petitioner provides no facts showing that he was in any way prevented from accessing the public record of his criminal case at any time since 1981. Under existing Fourth Circuit law interpreting subsection (d)(1)(D) of § 2244, in absence of some facts showing that a petitioner was prevented from consulting public records, the statue runs from the time he/she *could* have seen the basis for the claim on the record, not from the time that he/she *actually* did see it. *See, e.g., Green v. Johnson*, 515 F.3d 290, 305 (4th Cir. 2008); *Wade v. Robinson*, 327 F.3d at 333; *Ocasio v. North Carolina*, No. 5:09-HC-2135-FL, 2010 WL 3603787 (E.D.N.C. Sept. 08, 2010); *El-Abdu'llah v. Director, Va. Dept. of Corr.*, No. 3:07CV494, 2008 WL 2329714 (E.D. Va. June 04, 2008). As a result, the undersigned finds that Petitioner has failed to show that his Petition is timely under § 2244(d)(1)(D).

In conclusion, Petitioner could have viewed the record of his criminal case as early as January 19, 1981 and he could have seen that the commitment order contained no judge signature. Thus, since the basis for his claim was evident in 1981, and since Petitioner has shown no facts requiring the exercise of equitable tolling of the statute of limitations in this case, the undersigned finds that Petitioner's habeas corpus Petition is barred by the statute of limitations.

## RECOMMENDATION

Accordingly, it is recommended that the Petition for a Writ of Habeas Corpus in this case be dismissed *with prejudice* and without issuance and service of process upon Respondent. *See Toney v. Gammon*,

11

79 F.3d 693, 697 (8th Cir. 1996) (a petition may be summarily dismissed if the record clearly indicates that petitioner's claims are either barred from review or without merit); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (federal district courts have duty to screen habeas corpus petitions and eliminate burden placed on respondents caused by ordering an unnecessary answer or return).

Petitioner's attention is directed to the important notice on the next page.

/s/ Robert S. Carr
Robert S. Carr
United States Magistrate Judge

December 7, 2010
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).